EDITH H. JONES, Circuit Judge,
dissenting:
Although my colleagues’ opinion does not say so directly, I believe they are concerned about the apparent injustice surrounding this prosecution and the government’s possible attempt .to “manufacture” post-hoc evidence in its favor. Such sympathies may not be misplaced, but they have resulted in an interpretation of “final action” by a foreign government that will yield results both uncertain and detrimental to the government’s legitimate prosecutorial interests in an increasingly globalized community. I therefore respectfully dissent.
First, I am not as concerned as the majority about attempting to fashion a “bright-line rule” for “final action” under this statutory extension of the statute of limitations. The majority say they do not want to promote prosecutorial foot-dragging. But Congress *995 has set an outer limit on the extension of statutes of limitations for these purposes— three years — and I see no reason for niggling the government about reasonable developments that occur -within the three-year period. Yet that is what the majority has done by applying its “foreign government subjective test” and artificially ignoring the full range of German responses to the prosecuto-rial request. The purpose of this statute was to facilitate, not turn into a game, the cumbersome process of obtaining evidence from foreign governments.
Second, the “bright-line” test of the majority is both ephemeral and unrealistic. To say that a foreign government’s “final action” depends on that government’s “subjective interpretation” of when it has fully complied with the request for evidence makes American law dependent on the customs and bureaucratic language of foreign cultures rather than on a sound application of American policy.[1] The meaninglessness of this “bright line” is obvious in the present context: although the German government allegedly closed its books on this matter in October, 1995, it continued to funnel documents to the U.S. for several months afterwards. I marvel that the majority can decipher the foreign government’s “subjective intent” when the German government’s actions and words are so contradictory. Indeed, I suspect that more often than not conflicting signals will emanate from official foreign communications, just as they routinely do within and among multi-layered bureaucracies everywhere. The majority’s “foreign government subjective test” will rarely reflect reality. Instead, we should look to the full range of events surrounding the German government’s response, the outer bounds of which comfortably — and well within the three-year limit — protect the timeliness of the' indictment. So viewed, the “final action” occurred either in January 1996 or in March of that year, when the last documents responsive to the American request were transmitted.
It should be noted here that the Bischel opinion, mentioning dispositive action by the foreign government, supports the majority’s position in form but not in substance. In Bischel, the Ninth Circuit refused to confine the interpretation of “final action” merely to the physical production of relevant documents, where the U.S. had also specifically requested a certificate of authenticity. The court opted for a broader rather than narrower construction of “final action” to include the complete response of the foreign government to the full request. Bischel is thus not inconsistent with the position I take. In fact, the indictment was rendered in Bischel before “final action” had occurred, inasmuch as no certification of authenticity had yet been received, and British officials were continuing discussions on certification even after the date of indictment. Here, where the German government was plainly continuing to cooperate with American authorities even after its letter of October 1995, to secure Dr. Maurice’s documents that were plainly within the scope of the request, I cannot see how Bis-chel would compel a finding that “final action” occurred before the train of events was complete.
Third, the majority’s decision, by confusing the interpretation of the tolling provision, will encourage the government to enlarge its foreign evidence request as much as possible to extend the tolling period. The government’s brief aptly points out one source of confusion, in a case where, as here, the government’s “dispositive response” is in fact incorrect:
The appropriate action in response to an incorrect letter indicating that full compliance has been made is for the government to consult with the foreign authority and detail the documents requested but not provided. Accepting the trial court’s decision that a letter incorrectly indicating that it has satisfied the official request constitutes final action would result in a statute of limitations beginning to run on either the date on which that letter was sent or on the date upon which the letter was received. A determination of which event reinstitutes the limitation period *996 could potentially effect [sic] the decision of whether the statute barred prosecution. Additionally- accepting the trial court’s decision requires that the statute of limitations continues to run while the. government takes additional steps to ensure compliance with its official request for assistance. Specifically, the government would be required to write, translate, and send a duplicative and second official request for assistance and to file an ex parte motion to toll the limitation period. Because, the statute of limitations would continue to run while the government seeks the production of documents originally requested, the trial court’s ruling subverts the • legislature’s intention in enacting 18 U.S.C. 3292 [to accommodate delays in obtaining evidence from abroad].
The government’s self-defense mechanism in response to the majority’s ruling must be to formulate overbroad requests for foreign evidence and thus to keep the limitations ball in the air as long as possible while trying to avoid erroneous or misleading “final action” statements by the foreign authorities. The majority’s result is self-defeating.
This decision works no large injustice, certainly not to its beneficiaries in the present case, but it creates unnecessary complications for law enforcement and, in my view, undermines the intent of Congress.
I respectfully dissent.

. The majority sets up a straw man in arguing that the government advocates judicial deference to the government’s inteipretation of what constitutes final action. I cannot find such an argument in the government’s brief. Instead, the government appears to contend, as I do, that "final action” must be interpreted realistically.